■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RILEY RAINEY, Appellant.— Appeal by defendant from a judgment of the County Court, Nassau County, rendered March 29, 1968, convicting him of manslaughter in the first degree, upon a jury verdict, and sentencing him to an indeterminate prison term of 10 to 20 years. Judgment reversed, on the law, and new trial ordered. The findings of fact below are affirmed. In our opinion, the learned trial court improperly charged the jury that defendant had an affirmative duty to retreat even if he was confronted by a felonious assailant, or assailants, who allegedly brandished knives. When a person is feloniously attacked by others, he is under no duty to retreat (*People* v. *Ligouri*, 284 N. Y. 309, 317–318; *People* v. *Clay*, 29 A D 2d 891). Defendant's failure to except to this portion of the charge is of no moment (Code Crim. Pro., § 527) where a manslaughter conviction is founded upon an erroneous charge (*People* v. *Butts*, 14 A D 2d 486, 487). In addition, prejudicial error occurred by the receipt in evidence, and the prosecutor's comment thereon, of testimony relating to what defendant told his attorney when exercising the privilege of consulting counsel (*Miranda* v. *Arizona*, 384 U. S. 436). This testimony and comment was an " intrusion of the grossest kind upon the confidential relationship between the defendant and his counsel " (*Hoffa* v. *United States*, 385 U. S. 293, 306). Officials are not to intrude into any telephone consultations between the defendant and his lawyer "before and during trial" (*Coplon* v. *United States*, 191 F. 2d 749; *Hoffa* v. *United States, supra*, p. 307). Christ, Acting P. J., Rabin, Benjamin and Kleinfeld, JJ., concur; Martuscello, J., dissents and votes to affirm the

judgment, with the following memorandum: Defendant was indicted for murder in the second degree and was convicted of manslaughter in the first degree. He was charged with having shot and killed one Samuel Bray with a pistol. Defendant was taken into police custody shortly after the commission of the crime. The arresting officer gave him the prescribed *Miranda* warning and immediately thereafter defendant said he had shot the man in self-defense. Defendant was taken to a stationhouse and was there advised of his constitutional rights. He indicated that he understood his rights. He told the police he had found a gun and on April 28, 1967 had gone to the Las Vegas Club at about 8:00 P.M., hoping to sell it. After a while he left the club and went to a party, returning to the club early in the morning. In the club he and Sam Bray (the deceased) started to argue and both of them left the club. Bray pulled a knife and started toward him. Defendant pulled the gun and told Bray to stop; when Bray continued to come he threw the gun down and it went off; and he saw Bray grab his stomach. Defendant then ran away. Subsequently, defendant was told that a written statement was desired and that an Assistant District Attorney would be called in for that purpose. Defendant then said for the first time that he wanted to call a lawyer, at which point all questioning stopped and defendant called his lawyer. He spoke with his attorney on the telephone in the presence of one of the police officers, who later testified he heard defendant tell the lawyer he had found the gun, he had gone to a bar, he had shot a man, the man was dead, and they had him at the stationhouse. Defendant did not testify at his trial. All the witnesses to the shooting testified they saw no knife in the hand of the deceased. The court gave the following charge relative to self-defense: "In connection with the question of excusable and justifiable homicide, it is necessary that I tell you what it means by these words for if a homicide is excusable or justifiable, as defined by law, it is not punishable as a crime. Now homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means with ordinary caution and without any unlawful intent. However, homicide is justifiable when committed in the lawful defense of the slayer when there is reasonable grounds to apprehend a design on the part of the person slain to commit a felony or to do some personal injury to the slayer and there is an imminent danger of such design being accomplished or in the actual resistance of an attempt to commit a felony upon the slayer in his presence. Now you will notice from this definition of justifiable homicide, that it is the defense commonly referred to as self-defense. Now ordinarily a defendant is not justified in taking a life in his own defense if it is in his power to avoid the attack or to retreat. In other words before one is justified in killing an assailant, he must retreat if he can do so and thus escape the attack. *However, to avoid a felonious aggression against his person if it occurred, the defendant is justified in standing his ground and if necessary destroying the person making the felonious attack*. Now, the question to be determined by you is whether this defendant had reasonable grounds from all appearances that Samuel Bray intended to commit a felony or to do a great personal injury to him and that the danger of his doing so was imminent and that this defendant actually so believed or anticipated. Now, if you find the defendant had reasonable grounds for believing that he was in great and imminent peril and that it was necessary for him to take such action to escape that peril, and that no other safe means of escape was open to him, then the killing would be justifiable and the defendant could not be convicted of murder in the second degree. Now, these are the rules of law relating to the justifiable and excusable homicide. Bear in mind, however, that the burden does not rest upon the defendant to prove that the homicide was justifiable or excusable. The burden, as always, rests upon the District Attorney to satisfy you by the

evidence beyond a reasonable doubt of the defendant's guilt and that the killing of Sam Bray was not justifiable or excusable." (Emphasis supplied.) There were no exceptions taken to this phase of the charge. In fact, at the conclusion of the charge the Trial ·Judge was about to make reference to certain requests to .charge submitted by defendant's counsel, who was an experienced and seasoned criminal trial lawyer; but defendant's counsel indicated to the court that it was unnecessary for the court to make any comment as to the requests to charge, since the court had substantially covered all of such requests in its charge, and that he had no exceptions or further requests. In my opinion the charge was proper. The emphasized portion in the fourth paragraph of the above excerpt thereof reflects the law laid down in *People* v. *Ligouri* (284 N. Y. 309), relied upon by the majority. In *Ligouri*, the defendant was actually being assaulted. With regard to *People* v. *Clay* (29 A D 2d 891), decided by our court and also relied upon by the majority, it appears that Clay killed the victim while the victim was assaulting him and that the trial court refused to charge that Clay had a right to kill to resist the commission of an assault against his person. Here there was no request to charge and, moreover, the court had covered the deficiency which appeared in the *Clay* and *Ligouri* cases. Furthermore, at bar it appears that defendant was not being assaulted as was the case in *Ligouri* and *Clay*. I do not think that where the defendant is represented by an experienced and seasoned trial lawyer, as was the case here, who finds no objection to the charge as given, the defendant on an appeal may challenge the accuracy of the charge, unless there exists a deficiency which would result in substantial injustice done to him. With respect to the telephone conversation had with the attorney, I do not agree with the majority that this conversation, which took place in the presence of the police officers, should not have been revealed on the theory that it is to be regarded as an intrusion upon the relationship of defendant and his attorney. No one forced defendant to speak to his attorney within earshot of the police, since he had been clearly advised of his right to remain silent. Moreover, revealing the statement made over the telephone was not prejudicial, since defendant admitted in his initial statement that he had shot the deceased.